UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:22-cv-01593-SSS-SPx | Date | July 21, 2025 |
|---|---|---|---|
| Title | *Jeffrey P. Perrotte v. Alice L. Boulton et al* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|
| Irene Vazquez | Not Reported |
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:   (IN CHAMBERS) ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. 70]**

Before the Court is Defendants Alice L. Boulton, Jessea Rodriguez, and Judith A. Vella's ("Defendants") Motion for Summary Judgment ("Motion") filed on March 28, 2025. [Dkt. 70]. The Defendants argue they are entitled to summary judgment on the sole claim brought by Plaintiff Jeffrey P. Perrotte. The Motion is fully briefed. [Dkt. 74 ("Opposition" or "Opp."); Dkt. 77 ("Reply")]. Having considered the parties' arguments, relevant legal authority, and record in this case, the Court **GRANTS** Defendants' Motion.

I.    FACTUAL AND LEGAL BACKGROUND

On August 19, 1993, Perrotte was sentenced to state prison in California for 15 years to life following his conviction for second degree murder arising out of a high-profile car accident. [Dkt. 1 ¶ 8, "Complaint"]. At the time of the car accident, Perrotte had no-drug and no-alcohol conditions of probation. [Dkt. 70-1 at ¶ 4, Statement of Uncontroverted Facts or "SUF"]. On February 10, 2015, the California Board of Parole released Perrotte from prison. [Complaint at ¶ 9].

Among the conditions of Perrotte's parole, he was prohibited from traveling more than fifty miles from his home and from drinking or having alcohol in his

possession. [*Id*. at ¶¶ 10, 12]. Perrotte required written approval before he was permitted to leave the State. [SUF at ¶ 9]. Perrotte alleges that he attempted to communicate with his parole agent, first Samuel Vella and then Agent Boulton, to obtain their approval for travel to San Diego for a work trip with no response. [Complaint at 10–12]. On or about December 11, 2016, Perrotte attended a work meeting with a client in San Diego. [*Id*. at ¶ 12]. Perrotte alleges that once the meeting concluded, the client gave him a sandwich, two cans of beer, and an unopened "airplane size" liquor bottle which Perrotte intended to dispose of at his next stop. [*Id*.].

While on his way to the airport on December 11, 2016, Perrotte was stopped by a police officer with the Fountain Valley, California Police Department, approximately 110 miles from his home. [*Id*. at ¶ 13, SUF at ¶ 14]. The officer discovered the bottle of Jack Daniel's and two cans of Bud Light which were unopened. [SUF at ¶ 16]. Because Agent Boulton understood that Perrotte had violated his no-alcohol condition, she placed a "parole hold" on Perrotte, meaning he was arrested and sent to county jail pending investigation into the parole violations. [*Id*. at ¶ 21]. The police officer arrested Perrotte, at Boulton's request, and the alcohol was booked into evidence and photographs were taken of it.[1] [Complaint at ¶ 13].

Perrotte alleges that Defendants Boulton and unit supervisor J. Vella, with the support and ratification of J. Rodriguez, prepared a Probable Cause Determination Report ("Form"), under penalty of perjury, inserting false facts, such as claiming that Perrotte was in possession of an open alcohol container, and deliberately omitting the mitigating true facts provided by the police officer who made the stop, including: Perrotte was not under the influence of alcohol or drugs, Perrotte was cooperative during the traffic stop, Perrotte passed a field sobriety test and had .0% blood alcohol content, and the airline-size liquor bottle and two beer

---

[1] There is dispute about whether Perrotte gave the police his former parole agent's name, rather than Agent Boulton's. [SUF at ¶ 19].

cans were unopened.[2]  [*Id*. at ¶ 15].  Perrotte also claims Defendants entered false information in the Form that Perrotte had two "fifteen years to life sentences" to manipulate the Form and maximize the adverse result for him.  [*Id*. at ¶ 16].

Perrotte further alleges Defendant Boulton wrongly manually initiated a parole agent override, incorrectly adjusting the instrument from "moderately intensive" to "most intensive" which warranted a recommendation for revocation and return to custody, and this was known and ratified by Boulton's supervisor, J. Rodriguez.  [*Id*. at ¶ 18].

Defendants argue that Agent Vella approved maintaining the parole hold on Perrotte and she did not know that the Form contained any factual inaccuracies, otherwise she would not have signed it.  [SUF at ¶ 32].  Defendants argue Vella had no further involvement in addressing Perrotte's parole violations.  [*Id*. at 33].  Boulton investigated the violations and was notified the alcohol in Perrotte's car was unopened, but Perrotte's conduct still violated his parole condition not to possess alcohol.  [*Id*. at ¶ 41].

When determining how to respond to a parole violation, Agent Boulton had to use an electronic tool, called the Parole Violation Decision Making Instrument (the Tool).  [*Id*. at ¶ 42].  The Tool does not consider the number of criminal convictions a parolee has, the offenses they were convicted of, or the circumstances of their commitment offense.  [*Id*. at ¶ 43].  There was a computer error in December 2016 causing commitment offenses to appear twice when the form was printed, but this error had no impact on the Tool's recommendation.  [*Id*. at ¶ 44].  Agent Boulton completed the Tool on December 15, 2016, and stated that the alcohol in Perrotte's possession was unopened.  [*Id*. at ¶ 45].

The Tool recommended a lesser sanction than parole revocation.  [*Id*. at ¶ 46].  Agent Boulton exercised her discretion to recommend a different response and felt that Perrotte's parole violations were similar to his commitment offense, and he was displaying behavior that jeopardized the safety of others.  [*Id*. at ¶ 47].

---

[2] There is dispute about whether Agent Boulton deliberately used false information when filling out the Form.  Agent Boulton claims this was accidental and she explained the circumstances of Perrotte's arrest based on what she remembered from the telephone call.  Boulton claims she misheard, misremembered, or misunderstood the person she spoke with on the phone.  [SUF at ¶ 26].  This includes the information about the alcohol containers being open, which she later learned was not the case.  [*Id*. at ¶ 27].

Ultimately, she felt this was an "extraordinary" and "extreme" circumstance that warranted adjusting the Tool's recommended response by more than one level. [*Id*.]. Boulton claims her decision was based on her review of Perrotte's file and she was not required to select any "stabilizing factors" even if they applied. [*Id*. at ¶ 49]. Agent Rodriguez concurred with Boulton's opinion and completed the supervisor's portion of the Tool accordingly. [*Id*. at ¶ 51].

Defendants insist that when Agent Boulton and Agent Rodriguez made their decisions on Perrotte's parole violations, they both understood the alcohol in his possession was closed and he only had one murder conviction. [*Id*. at ¶ 52]. A petition for revocation and the Report were then filed with the Superior Court of California, County of Riverside and they state that Perrotte was arrested in Fountain Valley—more than 50 miles from his residence—and that the alcohol in his possession was unopened. [*Id*. at ¶ 58]. The Form and Tool are not transmitted to the Court, and neither was included in the petition for revocation filed with the superior court. [*Id*. at ¶ 59].

Perrotte had a revocation hearing on December 15, 2016, and a probable cause hearing on January 11, 2017. [Complaint at ¶ 17]. After the hearings, the court found that Perrotte violated both the condition not to possess alcohol and the condition not to travel beyond 50 miles of his residence without his parole agent's permission. [SUF at ¶ 66]. Perrotte claims that his parole was revoked on January 13, 2017, as a result of Defendants' actions.[3] [*Id*.].

Perrotte's Initial Parole Reconsideration Hearing was held on June 29, 2017, where the Parole Board concluded that his offenses and violations warranted more than a 12-month return to custody. [*Id*. at ¶¶ 73, 80].

On June 12, 2019, the California Board of Parole Hearings ("BPH") held another parole reconsideration hearing of the prior determination regarding Perrotte, which resulted in a recommendation that Perrotte be released on parole. [Complaint at ¶ 19]. The Presiding Commissioner at the hearing noted that Boulton's report contained "rather significant inaccuracies." [*Id*.]. Perrotte was ultimately released from prison on parole in July 2020. [*Id*.].

---

[3] Defendants contend the court's decision was not based on Perrotte possessing open alcohol or having more than one murder conviction. [SUF at ¶ 67].

Plaintiff initiated the present suit against Defendants by filing the Complaint on June 7, 2022.  [Complaint].  Plaintiff asserts a single Fourteenth Amendment claim against Defendants for allegedly deliberately fabricating information to revoke his parole.  [*Id*.].  Defendants now move for summary judgment on Plaintiff's claim.  [Motion].  The Court will discuss any other relevant facts below.

## I.     EVIDENTARY DISPUTES

Before addressing the merits of Defendants' Motion, the Court will rule on the parties' evidentiary disputes.

### 1. Plaintiff's Request for Judicial Notice

In support of its opposition to Defendants' Motion, Plaintiff requests the Court take judicial notice of two documents: (1) the Memorandum of Points and Authorities in Support of Respondents' Demurrer to the Petition for Writ of Mandate filed in Riverside County Superior Court (Exhibit P), and (2) Notice of Entry of Order re Respondents' Demurrer to the Petition for Writ of Mandate filed in Riverside County Superior Court (Exhibit Q).  [Dkt. 74-9 at 2].

Federal Rule of Evidence 201 permits a court to take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Exhibits P and Q are both public court records.  Each of the documents and the particular facts for which Plaintiff seeks judicial notice "can be accurately and readily determined from sources who accuracy cannot be questioned."  *See Gary G., et al. v. Gavin Newsom, et al.,* 2025 WL 1754951, (C.D. Cal. 2025) (holding that court records are subject to judicial notice because their accuracy can be readily determined).  As such, Plaintiff's Request for Judicial Notice is **GRANTED**.

### 2. Plaintiff's Evidentiary Objections

In addition to its Request for Judicial Notice, Plaintiff has filed objections to several statements offered by Defendants in various declarations in support of their Motion.  Plaintiff's objections sound in hearsay pursuant to Fed. R. Evid. ("FRE") 801 and 802; lack of foundation pursuant to FRE 602; lack of authentication pursuant to FRE 901; relevance pursuant to FRE 401; and improper expert opinions undisclosed under Federal Rule of Civil Procedure 26.  [Dkt. 74-11].

While objections based on relevance, lack of foundation, and lack of personal knowledge may be cognizable at trial, "on a motion for summary judgment, the Court is concerned only with the ***admissibility*** of relevant ***facts*** at trial, and not the ***form*** of these facts as presented in the [m]otion." *Ramirez v. Victoria's Secret Stores, LLC*, 2019 WL 6998784, at *2 (C.D. Cal. July 18, 2019) (overruling defendant's evidentiary objections based on relevance, lack of foundation, lack of personal knowledge, and speculation) (emphasis in original). As such, Plaintiff's evidentiary objections based on relevance, self-serving nature, lack of foundation, and lack of personal knowledge are **OVERRULED.**

In objecting to portions of the Declaration of Rhonda Skipper, Plaintiff fails to articulate how certain statements constitute an undisclosed expert opinion and instead relies on the language of Federal Rule of Civil Procedure 26. [Dkt. 74-11 at 3]. Indeed, Plaintiff fails to demonstrate how any of the remaining objections violate federal evidentiary rules and merely relies on citations to the provisions he believes are relevant to his objection without further explanation. [*Id*.]. As an initial matter, "[b]olierplate objections are 'tantamount to making no objection at all.'" *Gonzalez v. Iron Mountain Secure Shredding, Inc*., 2019 WL 6604876, at *1 (C.D. Cal. July 10, 2019) (*citing Dewidar v. Nat'l R.R. Passenger Corp*., 2018 WL 280023, at *5 (S.D. Cal. Jan. 3, 2018). Without more, Plaintiff's remaining objections are **OVERRULED.**

### 3. Defendants' Evidentiary Objections

Defendants similarly object to several statements made in declarations offered by Plaintiff in support of his Opposition. [Dkt. 77-2]. Defendants raise objections based on lack of personal knowledge pursuant to FRE 703; lack of foundation under FRE 602; undisclosed expert opinions under Rule 26; and inadmissible hearsay under FRE 801 and 802. [*Id*.].

For the same reasons above, objections based on relevance, self-serving nature, lack of foundation, and lack of personal knowledge are **OVERRULED**. *See Ramirez supra*. Defendants similarly fail to articulate in their objections how the identified portions of the Mora Declaration are undisclosed expert opinions and instead rely on the language of Federal Rule of Civil Procedure 26. [Dkt. 77-2]. Thus, Defendants' objection based on an undisclosed expert opinion is **OVERRULED**. *See Gonzalez supra*.

Remaining are Defendants' objections to a paragraph in Plaintiff's declaration ("Declaration of Jeffrey Perrotte") as inadmissible hearsay. [Dkt. 77-

2]. Hearsay is a concern of the Court in a motion for summary judgment. The Court finds the Declaration of Jeffrey Perrotte is admissible to show Perrotte's then-existing mental condition under FRE 803(3). Plaintiff is not necessarily offering the statement in the declaration for its truth, but to demonstrate that he learned of the report's statement that the alcohol container was closed, leading him to "ask[] [his] wife to contact Agent Boulton and ask her about the report saying if the alcohol was opened or closed." [Dkt. 74-3 at ¶ 25]. The Court finds that this statement is exempted from the rule against hearsay and thus the objection is **OVERRULED.**

Having addressed the parties' evidentiary objections, the Court may evaluate Defendant's motion for summary judgment.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(a). A fact is material if the dispute over that fact may affect the outcome of the lawsuit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court need not consider irrelevant and unnecessary factual disputes. *Id*. A dispute is genuine if a reasonable jury could return a verdict for the non-moving party based on the evidence. *Id.* The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To do so, the moving party must present evidence that either negates an essential element of the non-movant's case or demonstrates the non-movant does not have evidence sufficient to support its case. *Id*. If the movant has met its burden, the non-movant must set forth specific facts showing there is a genuine issue for a trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In deciding a summary judgment motion, a court must believe the non-movant's evidence and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

## III.   DISCUSSION

Defendants move for summary judgment on Plaintiff's § 1983 claim alleging deliberate fabrication causing revocation of his parole. [Motion at 17–27]. "To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010)).

In the Motion, Defendants contend that Plaintiff's claim not only lacks merit, but also is barred by both the *Heck* doctrine and qualified immunity. [Motion at 17–27]. Here, the Court agrees with the application of the *Heck* bar.

### 1. The *Heck* Bar

The *Heck* bar addresses concerns that arise where success on an individual's § 1983 claim might undermine the validity of that individual's underlying criminal conviction. *Heck v. Humphrey*, 512 U.S. 477, 484–87 (1994). Under *Heck*, a plaintiff cannot recover damages in a § 1983 action "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. In other words, a plaintiff must show favorable termination where a "successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement." *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003).

As Defendants correctly identify, courts have extended *Heck*'s favorable termination rule to claims challenging the validity of parole revocation. [Motion at 13]. *See Maciel v. Taylor*, No. 11-cv-3599-DMG, 2013 WL 12474062, at *7 (C.D. Cal. Jan. 31, 2013) (collecting authorities from various circuits). *Heck* therefore bars challenges to the validity of the confinement resulting from a parole revocation hearing "until the parole board's decision has been reversed, expunged, set aside or called into question." *Jones v. Mata*, No. 11-cv-5791-TEH, 2011 WL 6148729, at *1 (N.D. Cal. Dec. 9, 2011).

Citing to the various state court rulings relating to Plaintiff's parole revocation that was ultimately affirmed by the California Court of Appeal, Defendants demonstrate the parole board's decision has not been reversed, expunged, set aside, or called into question. [Motion at 14, 20.] Accordingly, Defendants assert Plaintiff's claim is *Heck*-barred. [*Id.*].

Yet Plaintiff contends an exception to *Heck* applies. [Opp. at 21].

### 2. *Nonnette* Exception to *Heck*

Plaintiff references what the Ninth Circuit recognized in *Nonnette v. Small*: an exception to *Heck* where habeas relief would be futile for plaintiffs no longer in custody within the meaning of 28 U.S.C. § 2254(a). [*Id.* at 21–22]. *Nonnette v. Small*, 316 F.3d 872, 875–76 (9th Cir. 2002) (citing *Spencer v. Kemna*, 523 U.S. 1, 14–16 (1998)).

To overcome the *Heck*-bar through the *Nonnette* exception, the plaintiff must no longer be in custody (mooting habeas relief) and must have diligently pursued habeas relief. *Guerrero v. Gates*, 442 F.3d 697, 705 (9th Cir. 2006); *Galanti v. Nevada Dep't of Corr.*, 65 F.4th 1152, 1156 (9th Cir.) (discussing the diligence requirement under *Guerrero*).

### i. Whether Habeas Relief Would Have Been Moot

In *Nonnette*, a former prisoner brought a § 1983 claim to challenge the revocation of his good-time credits. *Nonnette*, 316 F.3d at 874. The Ninth Circuit found Nonnette's claim was not *Heck*-barred because his subsequent release from incarceration would cause his habeas petition to be dismissed as moot. *Id.* at 876.

As in *Nonnette*, Perrotte was not imprisoned at the time he brought this claim against Defendants. [Opp. at 21]. Had he pursued habeas relief at that time, it would likely have been dismissed as moot. Moreover, Perrotte does not challenge his initial conviction or sentence for second-degree murder. [Complaint]. Instead, he challenges his parole revocation based in the alleged deliberate fabrication. [*Id.* at 9]. Success in this case would not imply the invalidity of his initial murder conviction. Therefore, the *Nonnette* exception applies and could prevent Perrotte's case from the *Heck* bar.

Having established habeas relief would have been moot, Perrotte must also show that he diligently pursued habeas relief when he was able.

### ii. Whether Habeas Relief was Diligently Pursued

The Court is unpersuaded that Perrotte diligently pursued habeas relief as required under *Guerrero*. In *Guerrero*, the Ninth Circuit found plaintiff Guerrero's § 1983 claim *Heck*-barred. *Id.* at 70205. Even though Guerrero was no longer in custody, he failed to timely pursue habeas relief within the applicable statute of limitations. *Id.* at 702–705. Three years had passed between Guerrero's initial encounter with LAPD, while the applicable statute of limitations barred his claim after a year. *Id.*

Similarly, although Perrotte attempted to file internal grievances and appeals upon learning of the alleged fabrication of evidence in June of 2018, he failed to submit his writ of mandate until July 2019, over a year later. [Opp. at 23]. The caselaw and relevant statutory authority are clear that this is insufficient for timely pursuit of habeas relief to avoid the *Heck* bar. *See Galanti v. Nevada Dept. of Corrections*, 65 F.4th 1152, 1156 (9th Cir. 2023) (highlighting the one-year

deadline imposed on filing federal habeas petitions in the context of a § 1983 claim); *Cunningham v. Gates*, 312 F.3d 1148, 1153 n.3 (9th Cir. 2002) (stating that "failure [to timely] pursue [federal] habeas remedies" does not protect against *Heck*). *See also* 28 U.S.C. § 2244(d)(1) (outlining a one-year period of limitations for habeas relief). Relief from the *Heck* bar requires pursuit of *habeas relief*. Even though he sought a writ of mandate, Perrotte's actions failed to meet the timeliness and diligence requirements required to avoid dismissal.

The Court finds Perrotte did not pursue habeas relief with sufficient diligence and timeliness to avoid the *Heck* bar, and Perrotte's parole revocation has not been subsequently expunged, set aside, or called into question.

The Court declines to reach the merits of Perrotte's deliberate fabrication claim and Defendants' qualified immunity defense.

## IV. CONCLUSION

For the reasons explained above, the Court hereby **GRANTS** Defendant's Motion. [Dkt. 70]. The Court **ORDERS** Defendant to lodge a proposed judgment no later than **August 1, 2025**.

All future hearing and trial dates are **VACATED**.

**IT IS SO ORDERED.**